IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUAN MIGUEL LOPEZ-MARTINEZ, | : |
| Petitioner | : |
| v. | : Case No. 3:24-cv-17-KAP |
| LEONARD ODDO, WARDEN, | : |
| MOSHANNON VALLEY PROCESSING | : |
| CENTER, *et al.*, | : |
| Respondents | : |

Memorandum Order

I previously recommended dismissal of the petition as moot at ECF no. 10; subsequently all parties consented to my jurisdiction.

Petitioner Lopez-Martinez, who was formerly detained in this district by the Department of Homeland Security at the Moshannon Valley Processing Center, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.§ 2241. ECF no. 1. Petitioner is a national of Mexico who sought both asylum and withholding of removal. While petitioner was at MVPC on November 28, 2022, a data breach occurred resulting in the names of petitioner and of other DHS/ICE detainees being published on a public website. Fearing that he would be subject to location and attack by Mexican cartels, petitioner subsequently spent his time at MVPC in more restrictive conditions of custody. Petitioner filed a civil suit (that remains pending) seeking money damages as a result of the data breach in November 2023, and in February 2024 petitioner filed this habeas petition. On March 31, 2024, petitioner's application for asylum was denied, petitioner was ordered removed, and petitioner's application for withholding of removal was granted. On April 5, 2024, petitioner had a bond hearing and was released on conditions.

The habeas petition is pursuant to the holding of Zadvydas v. Davis, 533 U.S. 678 (2001), in which the Supreme Court ruled that a foreign national subject to a removal order cannot be detained indefinitely when the foreign national "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 689. If there is no significant likelihood of removal a foreign national can still be detained for a limited set of reasons, including the threat of terrorism or other threats to national security, the risk of the spread of a highly contagious disease, and the risk of adverse foreign policy consequences. 8 C.F.R.§ 241.14.

Zadvydas resulted in an administrative process, *see* 8 C.F.R.§ 241.13 (setting out the procedural framework), for deciding the question of release or detention of persons when the execution of a final order of removal is delayed. In Meighan v. Chertoff, 2008 WL 1995374 *2-3 (S.D.Tex. May 6, 2008), the court summarized this review process as

follows:

After <u>Zadvydas</u>, the Attorney General issued regulations to implement administrative review procedures for those aliens detained beyond the removal period. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed.Reg. 56977 (Nov. 14, 2001) (*codified at* 8 C.F.R. § 241.13). Under this scheme, an eligible alien may submit a written request for release to the Headquarters Post–Order Detention Unit ("HQPDU") asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(d)(1). The alien must include with the written request information sufficient to establish his compliance with the obligation to effect his removal and to cooperate in the process of obtaining necessary travel documents. 8 C.F.R. § 241.13(d)(2). The HQPDU must respond in writing to the alien, acknowledging receipt of the request for a review of his continued detention. 8 C.F.R. § 241.13(e)(1). Immigration officials may detain the alien until it has made a determination whether there is a significant likelihood that the alien can be removed in the reasonably foreseeable future. *See id*.

The administrative review process contemplates the preparation of a record. If the HQPDU believes that the alien's request provides grounds for further review, it may, in an exercise of discretion, forward a copy of the alien's written request for release to the Department of State for information and assistance in the form of detailed country conditions information or anything else that may be relevant to whether a travel document is obtainable from the country at issue. 8 C.F.R. § 241.13(e)(3). In making its decision about whether removal is reasonably foreseeable, the HQPDU considers a number of factors, including, but not limited to: (1) the history of the alien's efforts to comply with the order of removal; (2) the history of previous efforts to remove aliens to the country in question or to third countries; including the ongoing nature of the efforts to remove the particular alien and the alien's assistance with those efforts; (3) the reasonably foreseeable results of those efforts; and (4) the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. 8 C.F.R. § 241.13(f). Where there is a continuing effort to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances. See id.

According to the applicable regulations, the HQPDU shall issue a written decision based on the administrative record, including any documentation supplied by the alien, regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances. 8 C.F.R. § 241.13(g). If there is no significant likelihood that the alien will be removed in the reasonably foreseeable future, HQPDU officials shall promptly make arrangements for the alien's conditional release. 8 C.F.R. 241.13(g)(1). If there is a significant likelihood that the alien will be removed in the reasonably foreseeable future, however, the HQPDU shall deny the alien's request for release. 8 C.F.R. 241.13(g)(2). There is no administrative appeal from the

HQPDU's decision to deny a request for release.

Because petitioner had a bond hearing on April 5, 2024, and was released under conditions, there is no continuing Zadvydas issue. The respondent argues that the petition is moot. The petitioner contends that it is not moot because of the "capable of repetition yet evading review" doctrine. He adds that he already spent 498 days in solitary confinement and does not want to go through that again.

The Court of Appeals held in McLaurin v. Larkins, 199 Fed.Appx. 193 (3d Cir. 2006) that a habeas petitioner, McLaurin, who alleged that a parole board used incorrect parole standards in denying him parole in 1998, but who was paroled in 2005 with the petition pending, had no live case or controversy. The Court of Appeals ordered that the petition be dismissed as moot. Addressing McLaurin's claim that he could be denied parole in the future based on the same incorrect standards, the Court of Appeals stated:

> The "capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). McLaurin's assertion of this hypothetical future injury is too speculative to qualify for the exception to the mootness doctrine.

199 Fed.Appx. at 195. The Supreme Court, in the case quoted by the Court of Appeals, explained that a past injury -possibly remedied in a damages action- did not provide standing for an equitable claim "where there is no showing of any real or immediate threat that the plaintiff will be wronged again." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). In City of Los Angeles v. Lyons, Lyons claimed that he had been subjected to an illegal chokehold during a police traffic stop, and in his civil suit sought both damages for his past injury and equitable relief barring future use of chokeholds except when necessary to counter the threat of deadly force. Although the Supreme Court acknowledged that it was possible among "countless encounters" between police and citizens that some person would in the future be subject to an illegal chokehold, 461 U.S. at 108, and Lyons alleged fifteen chokehold-caused deaths had already occurred after his encounter during the pendency of his complaint, 461 U.S. at 100, Lyons had no standing to seeking equitable relief because any claim that Lyons himself would again experience injury as a result of that practice was "speculative." 461 U.S. at 109.

It is as certain as sunrise that Zadvydas claims will continue to be made by removable aliens in detention. It is possible if not probable that some of those claims will have merit. Precedent is clear, however, that the possibility that petitioner may at some future point again be in custody and the possibility that he may have a future Zadvydas claim do not give him standing to litigate that claim now.

As I observed at an earlier stage of this matter, for a federal court to have jurisdiction over a case, an actual controversy must be extant not only at the outset of litigation, but throughout its course. <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 67 (1997). *See also* <u>Camreta v. Greene</u>, 563 U.S. 692, 711 (2011) ("When subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur we have no live controversy to review." (cleaned up, citations omitted)). The injury that the petition sought to remedy has been remedied. If the petitioner is detained again, that will present a new factual and therefore legal context. The petition is dismissed as moot. The Clerk shall mark this matter closed.

DATE: May 14, 2024

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. Mail to:

Juan Miguel Lopez-Martinez
516½ N. New Street
Allentown, PA 18102